IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, Assignee of the Claims of Agency One Insurance, Inc., and Pamela A. Siroky, | ) ) ) ) ) | 8:13CV78 |
| | ) ) | MEMORANDUM AND ORDER |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WESTPORT INSURANCE CORP., | ) ) | |
| Defendant. | ) | |

Plaintiff, Metropolitan Property and Casualty Insurance Company ("Met P&C"), assignee of the claims of Agency One Insurance, Inc. ("Agency One"), and Pamela A. Siroky ("Siroky"), has filed two motions for partial summary judgment, while Defendant, Westport Insurance Corporation ("Westport"), has filed a motion for reconsideration of the court's denial of its motion for summary judgment. The court will deny Westport's motion for reconsideration and will grant Met P&C's first motion for partial summary judgment. Met P&C's second motion for partial summary judgment will be denied because there is a triable issue of collusion.

Met P&C's first motion for partial summary judgment, filed on March 11, 2015 (Filing No. 131),[1] seeks a ruling that Westport breached its contractual obligations under an errors and omissions insurance policy to defend and indemnify Agency One

---

[1] On April 27, 2015, a few days after briefing on the motion was completed, the parties filed joint motion for extension of time for completion of briefing on Westport's motion for reconsideration and for filing additional motions. The parties indicated they were pursuing mediation. The joint motion for extension of time was granted, and a new progression schedule was established.

and Siroky against a direct negligence claim in a lawsuit filed by Met P&C in the United States District Court for the Northern District of Iowa.[2] In response, Westport contends the claim is specifically excluded from coverage as "arising out of" the wrongful act of an unlicensed Agency One employee.[3] Westport previously made the same argument in support of its motion for summary judgment, which the court denied on January 7, 2015. Westport also contends a confessed judgment entered in the Iowa lawsuit on the negligence claim was the product of collusion between Met P&C, Agency One, and Siroky.

Met P&C's second motion for partial summary judgment, filed on June 30, 2015 (Filing No. 161), seeks a ruling that the settlement of the Iowa lawsuit, including the confession of judgment and assignment of claims by Agency One and Siroky, was made in good faith and is reasonable. In response, Westport contends the evidence establishes collusion, or at least the existence of a genuine issue of material fact.[4]

<u>Westport's Motion for Reconsideration</u>

On April 6, 2015, Westport filed a motion for reconsideration of that portion of the court's memorandum and order entered on January 7, 2015 (Filing No. 123), which denied a motion for summary judgment filed by Westport (Filing No. 90). Westport contends the court erred in finding that a "Specified Individual Entity

---

[2] The Iowa lawsuit was settled in June 2014, approximately 18 months after the the present action was commenced by Agency One and Siroky. Their claims against Westport were assigned to Met P&C as part of the settlement. Met P&C was then substituted as the party plaintiff here.

[3] Met P&C has filed a motion requesting leave to file supplemental authority (Filing No. 170), which will be granted *instanter*.

[4] When Westport responded to the first motion for partial summary judgment, it also claimed additional discovery was needed on the collusion defense. Westport has not objected that the second motion for partial summary judgment is premature, however, and it appears that discovery has now been completed.

Exclusion" by its terms does not apply to exclude insurance coverage with respect to allegations of negligence that were made by Met P&C against Agency One and Siroky in the Iowa lawsuit. Westport also contends the court erred in finding there was a genuine issue of material fact as to whether the exclusion, even if applicable to such allegations, was effective at the time Met P&C made its claims against Agency One and Siroky.

"[T]he Federal Rules of Civil Procedure 'do not mention motions for reconsideration.'" *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (quoting *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999)), but the Eighth Circuit has "determined that motions for reconsideration are 'nothing more than Rule 60(b) motions when directed at non-final orders,'" *id.* (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003)); *accord Nelson v. American Home Assur. Co.* 702 F.3d 1038, 1043 (8th Cir. 2012) (applying Rule 60(b) standards to affirm district court's denial of motion for reconsideration of order denying summary judgment).[5] Rule 60(b) provides that a party may be relieved from an order for "mistake, inadvertence, surprise, or excusable neglect," for "newly discovered evidence," or for "fraud." Fed. R. Civ. P. 60(b)(1)-(3). The rule also contains a catch-all provision which states that relief may be granted for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), but this "is not a vehicle for simple reargument on the merits." *Broadway*, 193 F.3d at 989-90.

The Specified Individual Entity Exclusion, which Westport relies upon in defense of this action, states:

---

[5] Because the order denying Westport's motion for summary judgment is not a final order, the court's rulings may be changed without violating the law-of-the-case doctrine. *See Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 905-06 (8th Cir. 2010) (the law-of-the-case doctrine only applies to final orders, not interlocutory orders such as the denial of a motion for summary judgment); *First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007) (interlocutory orders "can always be reconsidered and modified by a district court prior to entry of a final judgment.") (quoting *United States v. Hively*, 437 F.3d 752, 766 (8th Cir. 2006)).

> This INSURANCE INDUSTRY PROFESSIONALS "coverage unit(s)"
> does not apply to any "claim" or "loss" arising out of any "wrongful act"
> in the performance of business services by DOUG INLAY or any
> vicarious liability or apparent authority for liability for any "wrongful
> act" in the performance of business services by DOUG INLAY.

(Filing No. 92-16 at CM/ECF p. 49).[6] Westport argued in support of its motion for summary judgment that the exclusion "is clear, unambiguous and precludes coverage for the Met P&C claim against Agency One." (Filing No. 91 at CM/ECF p. 21).

Focusing only on the first part of the exclusion, Westport noted that "[t]he Nebraska Supreme Court has stated that the phrase 'arising out of' is broad and comprehensive and requires only 'but for' causation," and then argued that the exclusion applies "[i]n this case [because] 'but for' Inlay's misconduct, there would have been no claim against Agency One." (Filing No. 91 at CM/ECF pp. 21-22) (internal quotes and citation omitted). Met P&C, on the other hand, looked to the second part of the exclusion and argued that "[w]hile the Met P&C Lawsuit clearly centers on ... the vicarious liability of Agency One for Inlay's writing of the policy ...., certain claims and allegations go directly to the conduct of Agency One," including claims that "Siroky and Agency One were each negligent in their failure to adequately train, monitor and supervise their employees and producers" and in "fail[ing] to properly investigate before the binding and issuing of the [Met P&C] policy." (Filing No. 93 at CM/ECF p. 17). The court accepted Met P&C's argument and found Westport had created an ambiguity by specifically excluding vicarious liability claims

---

[6] Doug Inlay sold insurance while working as an independent contractor for Agency One from May 2010 until November 2010, when his Iowa producer's license was revoked. He then became an employee of Agency One. The Westport insurance policy was issued on February 16, 2011, for a term of one year. It is a "claims made" policy. Westport learned about the revocation of Inlay's license in July 2011. In February 2012, Westport extended the policy for a period of 60 days, until April 16, 2012. In March 2012, Westport endorsed the policy with the Specified Individual Entity Exclusion, extended the policy for an additional 41 days, until May 27, 2012, and gave 60 days' notice that the policy would not be renewed.

that would already be excluded from coverage if the phrase "arising out of" were to be given the broad and comprehensive meaning urged by Westport.

Arguing in support of its motion for reconsideration, Westport complains that the court "raised the ambiguity issue *sua sponte* in the opinion ... without affording Westport a full and fair opportunity to present argument or evidence regarding ambiguity or the manner in which the exclusions, if ambiguous, should be interpreted." (Filing No. 158 at CM/ECF p. 12). The court disagrees. The meaning of the Specified Individual Entity Exclusion was put directly at issue by Westport's motion for summary judgment, which made it incumbent upon the court to decide, as an initial matter, whether Westport was correct to assert that the exclusion is unambiguous. "Under Nebraska law, a court interpreting a contract, such as an insurance policy, *must first determine*, as a matter of law, whether the contract is ambiguous." *Guerrier v. Mid-Century Ins. Co.*, 663 N.W.2d 131, 135 (Neb. 2003) (emphasis supplied). In any event, Westport has now had a full and fair opportunity to argue and present evidence on the question of whether the exclusion is ambiguous.[7]

Westport relies on two Eighth Circuit decisions, *In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008), and *Rapid Leasing, Inc. v. Nat'l Am. Ins. Co.*, 263 F.3d 820, (8th Cir. 2001), which indicate that overlapping exclusions in an insurance policy do not necessarily create an ambiguity, and may be applied despite their redundancy. The present case, however, involves a single exclusion which, as Westport admits, contains two "separate and independent" clauses. (Filing No. 146 at CM/ECF p. 33). Westport notes that the clauses are joined by the word "or," and states that "the

---

[7] "While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract." *Tighe v. Combined Ins. Co. of Am.*, 628 N.W.2d 670, 675 (Neb. 2001). "The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them." *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 635 N.W.2d 112, 120 (Neb. 2001).

Nebraska Supreme Court has recognized that the term 'or' is disjunctive, meaning that the two phrases are to be independently applied." (Filing No. 146 at CM/ECF p. 35, citing *Liddell-Toney v. Nebraska Dept. of Health and Human Services*, 797 N.W.2d 28, 32 (Neb. 2011)). Terms connected by "or" normally are read to have separate meanings and significance. *United States v. Wilson*, 41 F.3d 399, 401 (8th Cir. 1994). "When used as a disjunctive particle, the word "or" means an alternative." *Wolfe v. Abramson*, No. A-97-1210, 1999 WL 703291, at *6 (Neb.App. 1999) (unpublished) (citing *Mook v. City of Lincoln*, 21 N.W.2d 743, 744 (Neb. 1946); *see also Zach v. Eacker*, 716 N.W.2d 437, 441 (Neb. 2006) (disjunctive connector "or" signifies "that one provision [is to] be given effect to the exclusion of another."). By contrast, "the conjunctive connector 'and' typically suggests ... that more than one subparagraph might apply to any given circumstances." *Zach*, 716 N.W.2d at 441.

The Specified Individual Entity Exclusion states that the insurance policy does not apply to any claim "arising out of any 'wrongful act' ... by DOUG INLAY *or* any vicarious liability ... for any 'wrongful act' ... by DOUG INLAY." (Filing No. 92-16 at CM/ECF p. 49) (emphasis supplied). If the word "or" is disjunctive, then there is no insurance coverage if the claim either (1) arises out of a wrongful act by Inlay or (2) arises out of an insured's vicarious liability for Inlay's wrongful act. But this is not the construction urged by Westport. Instead of reading the exclusion as identifying alternative types of claims, Westport asserts that vicarious liability claims are subsumed within the first part of the exclusion because they arise out of a wrongful act by Inlay. In effect, Westport reads the word "or" to mean "including." *See, e.g., Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 685 (Iowa 2008) (finding no ambiguity in automobile policy which stated: "No coverage is provided for any claim arising from an accident or loss involving a motorized vehicle operated by an excluded person. This includes any claim for damages made against you, a relative, or any other person or organization that is vicariously liable for an accident arising out of the operation of a motorized vehicle by the excluded driver.").

-6-

The Specified Individual Entity Exclusion is ambiguous because although vicarious liability claims are causally connected to the wrongful act of an employee, the disjunctive connector "or" suggests that the second clause, excluding vicarious liability claims, is "separate and independent" from the first clause rather than being a component thereof.[8] If this interpretation is accepted, then it is also reasonable to conclude that claims made against Agency One and Siroky for their direct negligence are not be to considered as "arising out of" Inlay's wrongful act, and are not excluded from coverage by the Specified Individual Entity Exclusion. Westport's motion for reconsideration therefore will be denied.[9]

## Met P&C's First Motion for Partial Summary Judgment

Because the Specified Individual Entity Exclusion is ambiguous, it must be construed in favor of the insureds. *See Safeco Ins. Co. of America v. Husker Aviation,*

---

[8] "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings." *Van Kleek v. Farmers Insurance*, 857 N.W.2d 297, 301 (Neb. 2014).

[9] Westport also argues in support of its motion for reconsideration that "[c]ontrary to the Court's ruling on Westport's Motion for Summary Judgment, Westport's addition of the Exclusion was supported by the consideration of Westport foregoing its right to rescind the Policy when it learned of Siroky's multiple misrepresentations on the Agency One 2011 application for insurance" (Filing No. 146 at CM/ECF p. 26). To be clear, the court did not rule that there was a failure of consideration, merely that there was a genuine issue of material fact as to whether the exclusion was supported by consideration. The court also found there was a genuine issue of material fact as to whether the exclusion represented a unilateral modification of the contract. Westport argued it had relinquished its right to rescind the contract in exchange for the exclusion. Although the court mistakenly equated rescission with cancellation in its previous memorandum and order, *see Glockel v. State Farm Mut. Auto. Ins. Co.*, 400 N.W.2d 250, 256 (Neb. 1987) (recognizing that "in Nebraska there is a common-law right to rescind or avoid insurance policies for material misrepresentations"), Westport has not demonstrated that the court erred in denying its motion for summary judgment.

*Inc.*, 317 N.W.2d 745, 750 (Neb. 1982) ("[A]mbiguities must be construed against the insurer and if a policy is fairly susceptible of two constructions and one affords coverage and the other does not then the construction which affords coverage must be adopted."). Based on this ruling, and on the absence of any genuine issue of material fact, Met P&C seeks a determination that the negligence claim it alleged against Agency One and Siroky in the Iowa lawsuit is covered by Westport's policy.

The insuring agreement provides that Westport "will pay on behalf of the insured 'loss' for which the insured is legally liable caused by a 'wrongful act' committed by an insured arising out of 'professional services' rendered to others." (Filing No. 92-16 at CM/ECF p. 19). In addition, the policy provides that Westport "shall[ ] have the right and duty to defend, investigate, and conduct any settlement negotiations arising from 'claims' first made based upon alleged 'wrongful acts' of an insured." (Filing No. 92-16 at CM/ECF p. 21).[10]

Westport does not dispute that Agency One and Siroky are "insureds" under the policy,[11] that a "claim" was made against them by Met P&C during the policy period,[12] that they both suffered a "loss" when a confessed judgment was entered

---

[10] "Coverage under an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured." *Mortgage Exp., Inc. v. Tudor Ins. Co.*, 771 N.W.2d 137, 147 (Neb. 2009). "The duty to defend is broader than the duty to indemnify, and in the first instance, it is measured by the allegations of the complaint against the insured." *Cizek Homes, Inc. v. Columbia Nat'l Ins. Co.*, 853 N.W.2d 28, 33 (Neb.App. 2014).

[11] Agency One was the named insured, while Siroky was the president, manager and part-owner of Agency One.

[12] "Claim" means, among other things, "that an insured has received ... a written demand for money." (Filing No. 92-16 at CM/ECF p. 12).

against them,[13] that the alleged acts of negligence were "wrongful acts,"[14] and that the wrongful acts arose out of "professional services."[15] Nor does Westport dispute that the insureds gave proper notice of the claim.[16] It follows that Met P&C is entitled to the entry of summary judgment holding Westport liable for breach of contract by refusing to defend and indemnify Agency One and Siroky with the respect to the claim of direct negligence alleged against them by Met P&C in the Iowa lawsuit. It must next be determined whether there is evidence to support Wesport's affirmative defense that the confessed judgment in the Iowa lawsuit was the product of collusion.

<u>Met P&C's Second Motion for Partial Summary Judgment</u>

"[W]here an insurance company is notified of a pending suit against an insured and has a full opportunity to defend the action, the judgment against the insured, if obtained without fraud or collusion, will be conclusive against the insurance company." *Fokken v. Steichen*, 744 N.W.2d 34, 40 (Neb. 2008). However, "[a] consent judgment is subject to collateral attack when the facts demonstrate that the judgment or settlement was entered into fraudulently, collusively, or in bad faith." *Carlson v. Zellaha*, 482 N.W.2d 281, 283 (Neb. 1992) (citing *Metcalf v. Hartford Acc. & Ind. Co.*, 126 N.W.2d 471 (Neb. 1964); *Wolff v. Royal Ins. Co. of America*, 472 N.W.2d 233 (S.D. 1991)).

---

[13] "'Loss' means amounts payable by an insured in settlement of 'claims' or in satisfaction of judgments or awards ..., if covered by the Insuring Agreement." (Filing No. 92-16 at CM/ECF p. 23). Westport does contend, however, that the confessed judgment entered in the Iowa lawsuit was the product of collusion.

[14] "'Wrongful act' or 'wrongful acts' means any negligent act, error, omission, or 'personal injury' of an insured or any person for whose acts the insured is legally liable in rendering services for others." (Filing No. 92-16 at CM/ECF p. 23).

[15] "'Professional services' means activities as a managing general insurance agent, general insurance agent, insurance agent, or insurance broker." (Filing No. 92-16 at CM/ECF p. 23).

[16] A formal claim was submitted to Westport on April 2, 2012.

The burden is on the insurer to prove collusion urged as a defense. *Iowa Mut. Ins. Co. of De Witt, Iowa v. Meckna*, 144 N.W.2d 73, 81 (Neb. 1966). However, the insured may be required to make a prima facie showing that the settlement was entered into in good faith and that the amount of the settlement amount is reasonable. *See Otteman v. Interstate Fire & Cas. Co.*, 111 N.W.2d 97, 102-03 (Neb. 1961) ("If an insurer waives its right to defend, this leaves the insured free to defend the action to judgment or, in good faith, to make such settlement as ordinary and reasonable prudence and caution might indicate to be advisable.").[17] Met P&C contends it has made such a showing, and the court agrees.

---

[17] It has been held that in a case "involving a consent judgment with a covenant not to execute, ... a settlement may not be enforced against the carrier if it is unreasonable in amount or tainted by bad faith. Moreover, because the circumstances surrounding the settlement will be better known to the party seeking to enforce it, he should assume the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier." *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So.2d 589, 592 (Fla.Dist.Ct.App.1984); *Griggs v. Bertram*, 443 A.2d 163, 174 (N.J. 1982) ("[A] settlement may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith. The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer."); *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 535 (Iowa 1995) ("[I]n settlements like the one here [involving an assignment to the injured party of the insured's claim against its liability insurer for the insurer's failure to defend the insured against the injured party's claim, in return for the injured party's covenant not to execute on a stipulated judgment entered against the insured], an insurer, relying on fraud or collusion, must plead and prove these defenses. If either defense is proven, the settlement is invalid and unenforceable against the insurer. The injured party, however, has the burden to prove by a preponderance of the evidence that (1) the underlying claim was covered by the policy, and (2) the settlement which resulted in the judgment was reasonable and prudent. The test the fact finder must apply on this issue is what a reasonable and prudent person in the position of the [insured] would have paid to settle the [injured party's] claim. In applying this test, the fact finder must consider facts bearing on the liability and damage aspects of the claim as well as the risks of going to trial.").

-10-

As required by the court's local rules, Met P&C's brief filed in support of its second motion for partial summary judgment includes a 33-paragraph "statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). Westport's opposing brief includes an appropriate response to each paragraph. *See* NECivR 56.1(b)(1). In addition, Westport has included a separate, 57-paragraph "statement of material facts about which there is no dispute," and Met P&C has responded to each paragraph of this statement in its reply brief. However, Westport has moved to strike several of Met P&C's responses and has filed a sur-reply brief to address certain objections that were raised by Met P&C.[18]

Upon review of the briefs and referenced materials, the court finds there is no genuine dispute regarding the following facts stated by Met P&C:

> Pamela Siroky is and has been the President, manager and part-owner of Agency One since 1996. Siroky works and has always worked out of the David City, Nebraska office of Agency One. Before 1996, Siroky worked in the insurance business for 11 years.

> From 1996 until 2012, Agency One's insurance industry errors and omissions coverage was provided by Westport.

> On May 1, 2010, Agency One and Douglas Inlay entered into an Independent Agent Agreement.

> After May 1, 20120, Inlay was appointed as an authorized agent with all of the carriers with whom Agency One had appointments to produce and write policies.

---

[18] Westport's motion for leave to file this sur-reply brief (Filing No. 170) will be granted *instanter*. Westport's motion to strike (Filing No. 159) will be denied without prejudice. The court has disregarded any inadmissible evidence, and does not consider it necessary to address each and every objection that Met P&C makes to Westport's responsive statement of facts, or that Westport makes in reply to Met P&C's responses.

On or about December 7, 2010, while working for Agency One, Inlay submitted an application for a homeowner's property insurance policy to Met P&C on behalf of Patricia Potter and Sam Dedios (collectively "Potter"). In the application, Inlay described the property to be insured as a one-story, 1500 square foot single family residential dwelling built in 1958.

The Potter policy was due to expire in December 2011, after Inlay had left the employ of Agency One. Despite the incorrect description of the property in the original application, Agency One facilitated the renewal of the Potter policy in December 2011. Because Met P&C was not advised of any inaccuracies in the original application that was filled out and submitted by Inlay, Met P&C renewed the Potter policy in December 2011 for an annual term.

On January 12, 2012, during the 2011-2012 term of the Potter policy, the Potter property was destroyed by fire.

Met P&C paid $244,263.00 on the Potter claim.

On April 2, 2012, Siroky submitted a "Professional Liability Claim Form" to Westport. Along with the form, Agency One included a March 30, 2012 claim letter from an attorney for Met P&C. The letter stated that, during the time period he was employed by Agency One, Inlay wrongfully issued a Metropolitan P&C homeowner's policy to Potter with a period of December 15, 2010 to December 10, 2011. The letter alleged that had Inlay accurately described the premises to be insured, Met P&C would not have issued the policy to Potter.

Westport acknowledged receipt of the claim by letter dated April 5, 2012. On May 11, 2012, Westport subsequently issued a declination of coverage.

On May 31, 2012, an attorney for Agency One forwarded to Westport a copy of the complaint filed in Metropolitan Property & Casualty Insurance Company v. Agency One Insurance, Inc. and Pamela A. Siroky, Civil # 12-cv-4050, in the United States District Court for the Northern District of Iowa (the "Met P&C Lawsuit").

The complaint in the Met P&C Lawsuit (i.e. the Iowa case) was brought only against Siroky and Agency One, and alleged that they were liable for Inlay's actions in improperly submitting an application to Met P&C for the Potter property. Specifically, the complaint alleged Agency One failed to adequately train, monitor and supervise their employees and producers in the investigation, application, binding and issuing of a Met P&C policy.

On August 28, 2012, Westport sent a declination of coverage letter regarding the Met P&C Lawsuit to the attorney for Agency One and Siroky and to Siroky directly.

This declination of coverage letter states, in part:

Westport respectfully declines coverage under the Policy, including any defense, obligations and any indemnity for any loss incurred in this action, including any settlement or judgment entered by the court, for the following reason.

The Claim letter alleges that Mr. Inlay bound the Potter policy when he was not licensed to do so. The Complaint alleges that Agency One and Ms. Siroky are vicariously liable for Inlay's issuance of policies he bound while not licensed, including the Potter policy. Therefore, coverage under the Policy is precluded by the Specified Individual Entity Exclusion.

In February of 2013, Ms. Siroky and Agency One brought the instant action against Westport for breach of contract arising out of Westport's decision to deny coverage, as well as a declaratory action.

On or about June 17, 2014, Agency One and Siroky assigned all rights, claims, interests, and causes of action they held pursuant to the Policy to Met P&C and, in particular, Westport's refusal to defend and indemnify Siroky and Agency One for the claims and causes of action that were made against them by Met P&C in the Met P&C Lawsuit. The rights, claims, interests and causes of action that were assigned included any claims for breach of contract, bad faith, breach of warranty of an

implied duty of good faith and fair dealing, and breach of fiduciary duty ("the Assignment").

On June 20, 2014, a Notice of Acceptance of Offer to Confess Judgment pursuant to Federal Rule of Civil Procedure 68 was filed in the Met P&C Lawsuit in the amount of $261,620.90.[19]

The Confess Judgment of $261,620.90 was comprised of $244,263.00 for what Met P&C paid on the Potter claim and $17,357.90 for allocated costs, which included expenses associated with Met P&C's coverage investigation of the Potter claim. The coverage investigation required Met P&C's counsel to conduct two "examinations under oath" (EUO) during the adjustment of the Potter claim. The EUO's were conducted to aid in the investigation of the circumstances of the loss and to determine the circumstance surrounding the binding of the Potter policy.[20]

(Filing No. 162 at CM/ECF pp. 2-6, ¶¶ 1-18) (paragraph numbering and citations to record omitted).

Douglas Phillips represented Agency One and Ms. Siroky in the Met P&C Lawsuit in Iowa.

Mr. Phillips graduated from Pepperdine University Law School in 1980.

---

[19] Because the Iowa lawsuit was settled with Met P&C's acceptance of Agency One and Siroky's offer to confess judgment under Rule 68, the district court was not required to review the settlement. *See* Fed. R. Civ. P. 68(a) ("If ... the opposing serves a written notice accepting the offer, either party may then file the offer and notice of acceptance [and] ... [t]he clerk must then enter judgment.").

[20] Westport objects that these statements, which are directly supported by the affidavit of Charles Cavas, an associate general counsel for Met P&C who oversaw the "Met P&C Lawsuit" (Filing No. 163-2 at CM/ECF pp. 3-4, ¶ 15), are not otherwise substantiated. Westport's objection is overruled. Mr. Cavas also stated that "Met P&C is not seeking its allocated costs ($17,357.90) as damages in this case" (Filing No. 163-2 at CM/ECF p. 4, ¶ 16).

Mr. Phillips is licensed to practice law in Iowa and Nebraska.

Mr. Phillips has been a partner with the Klass Law Firm since 1991. His practice at the Klass Law Firm has primarily been insurance defense.

Agency One paid Mr. Phillips approximately $13,744.75 in attorney's fees and costs to defend the Met P&C Lawsuit.[21]

If the Met P&C Lawsuit did not settle, Mr. Phillips estimated that he would have billed between 75 and 100 additional hours to see the case though the end of trial.[22]

(Filing No. 162 at CM/ECF pp. 6-7, ¶¶ 22-27) (paragraph numbering and citations to record omitted).

Mr. Phillips advised Ms. Siroky that "her risk was significant" and that "the longer this case lived, the more expensive it was going to be for her."[23]

Mr. Phillips believed the settlement was in Agency One's best interest.[24]

(Filing No. 162 at CM/ECF pp. 7-8, ¶¶ 31, 32 (paragraph numbering and citations to record omitted)).

---

[21] Westport objects to this statement as unsubstantiated because Mr. Phillips, when asked whether the amount of $13,744.75 "sound[s] about right," he responded, "That would be pretty close." (Phillips Depo. at 115:14-18 (Filing No. 152-5 at CM/ECF p. 30)). Westport's objection is overruled.

[22] Although he was not absolutely certain, Mr. Phillips thought his hourly rate was $200. *See* Phillips Depo. at 111:13-16 (Filing No. 152-5 at CM/ECF p. 29).

[23] This statement is modified to conform to the evidence. *See* Phillips Depo. at 32:20-33:2 (Filing No. 152-5 at CM/ECF pp. 9-10).

[24] This statement is modified to conform to the evidence. *See* Phillips Depo. at 110:5-8 (Filing No. 152-5 at CM/ECF p. 29).

>David Dudley represented Agency One and Ms. Siroky in the instant coverage case before the assignment.
>
>Mr. Dudley graduated from the University of Nebraska College of Law in 1989. He has spent his entire law career practicing at Baylor Evnen, becoming partner in the mid-1990's. He is licensed to practice law in Nebraska.
>
>Mr. Dudley practices in the areas of personal injury defense; professional negligence defense, including insurance agent errors and omissions; agricultural torts; and workers' compensation.
>
>Mr. Dudley deemed the settlement amount reasonable "tak[ing] into consideration where [his] client found herself, facing the ongoing litigation in both states and the fact that she was looking at having to pay a judgment, potentially, for which she had no coverage.... [I]t was clear to [him] based on information [he] had that she could lose, and she would be responsible for that judgment personally."[25]

(Filing No. 162 at CM/ECF pp. 7-8, ¶¶ 28-30, 33 (paragraph numbering and citations to record omitted)).

In the Iowa lawsuit, Met P&C filed a motion for partial summary judgment with respect to the claims alleged against Agency One only. The motion was denied by the district court on March 25, 2014, approximately three months before the case settled. In its memorandum opinion, the court found that "a reasonable jury could conclude that Inlay was not acting within the scope of his employment when he placed the Potter policy," which would defeat a vicarious liability claim based on Inlay's actions.[26] The court noted that "Inlay knew he was not allowed to place policies while

---

[25] This statement is modified to conform to the evidence. *See* Dudley Depo. at 79:16-80:19 (Filing No. 152-6 at CM/ECF p. 21).

[26] The district court explained that "Met P&C has raises [*sic*] two separate theories of negligence in its complaint under one Count II. It alleges defendants were negligent with respect to the investigation, application, binding and issuing of a Met P&C policy for the Potter property. [Complaint] at ¶29. It also alleges defendants

his license was revoked or suspended and that doing so, while also misrepresenting those policies, was against the law." (Filing No. 166 at CM/ECF pp. 3-4, ¶¶ 4-6, 8, 10; Noyes Decl. (Filing No. 147-1), ¶ 10 & Ex. 1I (Filing No. 147-10 at CM/ECF p. 12).[27] The court also found there were genuine issues of a material fact as to whether Agency One was negligent in supervising Inlay, stating:

> A reasonable jury could find that Agency One did not know or have reason to know of Inlay's actions. Agency One points out there were two licensed agents in the Sioux City office while Inlay's license was suspended or revoked who could have been selling policies. Inlay also needed the Met P&C access codes to perform his authorized, appropriate duties as an employee. Whether Agency One knew or should have known of Inlay's actions at the time he placed the misrepresented policy, and whether Agency One's allegedly-negligent supervision was the proximate cause of Met P&C's harm, are appropriate questions for a jury.

(Filing No. 166 at CM/ECF p. 5, ¶ 11; Filing No. 147-10 at CM/ECF p. 14). Finally, "[b]ecause [the district court could not] find as a matter of law that Agency One [was]

---

were negligent in their failure to adequately train, monitor and supervise their employees and producers in the investigation, application, binding and issuing of a Met P&C policy. *Id.* at ¶30. The court discussed these theories separately, labeling the first theory "negligence" second theory "negligent supervision." (Filing No. 147-10 at CM/ECF p. 9, n. 1). With respect to the "negligence" theory, the court stated: "In order to hold Agency One liable for Inlay's actions, Met P&C must show Inlay was acting within the scope of his employment. This is known as the doctrine of respondeat superior, ...." (Filing No. 147-10 at CM/ECF p. 9).

[27] The court found there was no dispute as to the following facts, among others: "On December 1, 2010, Agency One hired Inlay as an employee and paid him a base salary to oversee the Sioux City office. According to his employment agreement, he was not allowed to participate in any part of the sales process of an insurance policy. Ms. Siroky informed [Kelly] Hanson [of Met P&C] of the new arrangement. Met P&C policies continued to be placed through the Sioux City office. Ms. Siroky presumed this was done through Sauce, who held an insurance license in December 2010, and later Hunter who also ultimately obtained a license." (Filing No. 166 at CM/ECF p. 4, ¶ 9; Filing No. 147-10 at CM/ECF p. 6).

vicariously liable for Inlay's misconduct, or directly liable for negligently supervising Inlay, [it could not] find as a matter of law that Agency One breached its contract with, or fiduciary duties to, Met P&C." (Filing No. 166 at CM/ECF p. 5, ¶ 12; Filing No. 147-10 at CM/ECF p. 14). The district court declined to address an argument that because Agency One and Met P&C had a contractual relationship, the "economic loss" rule precluded Met P&C from suing Agency One for negligence. (Filing No. 166 at CM/ECF p. 4, ¶ 7; Filing No. 147-10 at CM/ECF p. 12).

The following facts regarding the settlement of the Iowa lawsuit, as stated by Westport, are not disputed by Met P&C:

> After the summary judgment ruling, counsel for Met P&C circulated drafts of the offer to confess judgment and the acceptance of the offer to confess judgment, to Mr. Phillips, Mr. Dudley, and Charles Cavas, Met P&C's General Counsel.

> Before Mr. Cavas would agree to execute and enter into the agreement, Mr. Cavas stated that he would "like to have bad faith counsel in place and consult with them."

> Agency One, Ms. Siroky and Met P&C subsequently settled the lawsuit, without advising Westport or seeking its participation.

> The parties executed a settlement agreement dated June 17, 2014, which included an assignment of Agency One and Ms. Siroky's rights, claims and interests against Westport.

> The June 17, 2014 settlement agreement between Met P&C, Agency One and Ms. Siroky includes the following clauses at paragraphs 4 and 5:

>> 4. In further consideration of this assignment and the material cooperation of Pamela A. Siroky and Agency One with MET PC counsel in litigation filed or to be filed against Westport, MET PC expressly agrees to refrain from executing on or in any manner seeking to enforce the judgment against Pamela A. Siroky and Agency One

-18-

entered in the United States District Court for the Northern District of Iowa in the matter of (C12-450-LTS).

   5. MET PC further agrees to refrain from in any manner seeking to enforce said judgment against Pamela A. Siroky and Agency One.

On June 20, 2014, Met P&C filed a Notice of Acceptance of Defendants' Offer to Confess Judgment on Count II, the negligence claim, of Met P&C's Complaint in the amount of $261,620.90, plus "accrued costs and statutory interest."

Both the argument that Inlay was not acting within the scope of his employment and the economic loss doctrine were defenses to the negligence count.

Mr. Dudley and Mr. Phillips each testified he did not know why judgment had been entered as to this count.

Judgment was entered against Agency One and Ms. Siroky with their consent, even though Met P&C had agreed in open court and by stipulation that it would not hold Ms. Siroky personally liable.

Met P&C, Agency One and Ms. Siroky filed a Stipulation of Dismissal as to all other counts on June 27, 2014.

(Filing No. 166 at CM/ECF pp. 12-13, ¶¶ 38-47 (citations to record omitted)).

Westport argues that at least six factors establish that the confessed judgment was the product of collusion:

(1)   **attempts to harm the interest of the insurer**, as reflected in the documents whereby Met P&C's counsel offered to assist in the action against Westport and the substance of the communications between the parties whereby the plan was laid to set up Westport for bad faith;

-19-

(2)   **lack of serious negotiation** and the absence of any negotiation whatsoever on the amount of the consent judgment;

(3)   **the unreasonableness of the amount**, given that it was for more than 100% of the damages despite the fact that Met P&C's motion for summary judgment on liability was denied and the court raised serious doubts as to Agency One's liability;

(4)   **concealment**, given that neither Agency One nor Ms. Siroky informed Westport about the settlement negotiations and never responded to Westport's stated interest in participating in discussions, thereby concealing from Westport the parties' negotiations;

(5)   **profit to the insured**, given a 50/50 arrangement was discussed as a possible scenario with respect to damages awarded for potential punitive damages claim; [and]

(6)   **attempts to affect the insurance coverage**, given Met P&C's counsel offered to assist Agency One and Siroky's coverage counsel in their case against Westport prior to settlement discussions in light of Met P&C's conclusion it would only recover from Agency One if the coverage case were successful.

(Filing No. 166 at CM/ECF pp. 21-22) (bolding in original). *See Continental Casualty Co. v. Westerfield*, 961 F.Supp. 1502, 1505 (D.N.M. 1997), *aff'd*, 4 Fed.Appx. 703, 2001 WL 173662 (10th Cir. 2001) ("Any negotiated settlement involves cooperation to a degree. It becomes collusive when the purpose is to injure the interests of an absent or nonparticipating party, such as an insurer or nonsettling defendant. Among the indicators of bad faith and collusion are unreasonableness, misrepresentation, concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the interest of the insurer. They have in common unfairness to the insurer, which is probably the bottom line in cases in which collusion is found.")(quoting Stephen R. Schmidt, *The Bad Faith Setup*, 29 Tort & Ins. L. J. 705, 727-28 (1994)); *Carlson*, 482 N.W.2d at 284 (district court's finding that consent judgment was procured by collusion supported

-20-

by evidence that (1) amount of judgment was unreasonable given improbability of injured party's success against insured; (2) insured did not know how amount of judgment was determined; (3) insured's meager income motivated plaintiff to suggest consent judgment; and (4) insured was to be compensated out of amounts collected in exchange for consenting to judgment); *Wolff*, 472 N.W.2d at 235 (settlement amount must be reasonable in view of size of possible recovery and degree of probability of claimant's success against insured). Each of these factors will be examined below.

### *Bad Faith Claim Against Westport*

First, Westport argues there "is evidence of an intent to harm the insurer ... through the engineering of a bad faith claim against Westport, which did not exist until Met P&C concocted the plan to manufacture such a claim against Westport." (Filing No. 166 at CM/ECF p. 25). As evidence of this plan, Westport points to the following facts, none of which are disputed:

> Following the assignment, Met P&C added itself as a party to this case with its own counsel and attempted to add a claim for bad faith, which Ms. Siroky and Agency One had not previously asserted. The motion to amend was denied because it was untimely and because Met P&C failed to explain or argue "why the new claim was not raised long ago."

> Met P&C thereafter sent Westport a demand letter, seeking $1.25 million "to resolve the claims brought in the current lawsuit, as well as a bad faith claim that will be forthcoming." Met P&C stated that if it was not allowed to assert the claim for bad faith in an amended complaint, it "will simply file a new lawsuit in Nebraska Federal Court alleging the bad faith claim. One way or another, Westport is going to have to deal with a bad faith claim."

Met P&C thereafter filed a separate lawsuit, seeking, among other relief, bad faith damages, attorneys' fees incurred in the Met P&C lawsuit, and attorneys fees incurred in the present action.[28]

Mr. Dudley stated that there was no agreement between Agency One, Siroky, and Met P&C with respect to recoupment of any fees Ms. Siroky and Agency One had paid Mr. Dudley in the coverage lawsuit. [29]

(Filing No. 166 at CM/ECF p. 15, ¶¶ 54-56[30] (paragraph numbering and citations to record omitted); Filing No. 76; Filing No. 84; Filing No. 167-6; Filing No. 167-7; Dudley Depo. at 83:14-18 (Filing No. 152-6 at CM/ECF p. 22)).

Westport asserts that "Charles Cavas, associate general counsel for Met P&C, coached his attorney on the sequence of events that must take place as to 'best position' a bad faith claim against Westport." (Filing No. 166 at CM/ECF p. 26). In support of this assertion, Westport cites an email Mr. Cavas sent to Met P&C's counsel, John Gray, on February 17, 2014, which states in part:

In order to best position this case a bad faith case against the E&O carrier, please make a 20 day settlement demand of $244,243 on Agency One. This is the amount of the indemnity payment to Potter. In turn, they should forward the demand to their E&O carrier and request immediate payment. Should the E&O insurer effuse [*sic*] to pay the demand, settle the case or otherwise enter into meaningful negotiations with MPC, we accept a consent judgment from Agency Once and forbear not to enforce

---

[28] The lawsuit was filed in this court on March 2, 2015, and docketed as Case No. 4:15CV3021. Westport has filed a motion to dismiss the action.

[29] Dudley also testified that "there was no agreement with Met at the time of the assignment that she would get attorney fees back" or that Siroky "would get anything if Met decided to continue to litigate against Westport and was successful." (Dudley Depo. at 83:23-25, 84:1-15 (Filing No. 152-6 at CM/ECF p. 22)).

[30] Met P&C's relevancy objections to paragraph 55 and other documents discussing a bad faith action are overruled.

the judgment in exchange for Agency One contract rights against the carrier.

(Filing No. 166 at CM/ECF pp. 8-9, ¶ 26; Filing No. 167-2 at CM/ECF p. 3).[31] Mr. Gray responded to Mr. Cavas's email that same day, stating that he had dictated a demand letter to Doug Phillips. (Filing No. 166 at CM/ECF p. 10, ¶ 31; Filing No. 167-2 at CM/ECF p. 4).

Westport states that "Mr. Cavas reiterated this necessary sequence of events, referring to it as 'the plan,' to fellow Met P&C employee, Kelly Hanson." (Filing No. 166 at CM/ECF p. 26). It cites an email from Mr. Cavas to Ms. Hanson, dated February 17, 2014, which reads:

> As we discussed, the plan is to make a settlement demand on Agency One which they will in turn tender to their E&O insurer. If, as expected, the carrier rejects the demand, Agency One will consent to a judgment in the case for $244,234 and in exchange for an assignment of their contract/bad faith rights against their E&O insurer, Met P&C will forbear from enforcing the judgment against Agency One.

(Filing No. 166 at CM/ECF p. 9, ¶ 27; Filing No. 167-2 at CM/ECF p. 5).

Westport argues that "Met P&C and Agency One both desired a refusal on the part of Westport " (Filing No. 166 at CM/ECF p. 27), as evidenced by the foregoing email and by an email Mr. Phillips sent to Siroky on February 25, 2014, after receiving Met P&C's settlement demand. Mr. Phillips stated:

> I have a letter from John Gray. See attached. It is not the letter we were expecting, but there is a reason for that. In order for you to continue your discussions with Met about assigning the Westport claim to them, Met must first make a settlement demand on Agency One. I want you to confer with David [Dudley] on this, but it is my belief that he should

---

[31] Met P&C objects to this email and to other evidence cited by Westport as hearsay. The objections are overruled. *See* Federal Rule of Evidence 801(c)(2), (d)(2).

immediately send this letter to Westport with a demand that that they pay this claim. They will refuse. When they do, then Met can follow up and send you the letter we expected to receive, making the assignment proposal.

(Filing No. 166 at CM/ECF p. 10, ¶ 32; Filing No. 147-6 at CM/ECF p. 5).

Met P&C disputes that these emails evidence a plan to manufacture a bad faith claim, and contends that associated emails from Doug Phillips to Pam Siroky and David Dudley only discuss a potential settlement "with Met [P&C] that would involve [Met P&C] stepping into the Westport case in some fashion." (Filing No. 168 at CM/ECF p. 21; Filing No. 147-6 at p. 7). Met P&C further contends that "David Dudley's testimony also refutes this implication" (Filing No. 168 at CM/ECF p. 21):

> Q. During the course of your discussions with Met, who first proposed assigning to Met a potential bad faith claim against Westport?
> A. I'm not sure there was ever a specific assignment of a bad faith claim.
> Q. In your discussions with Met and their representatives, was it conveyed to you by their counsel that—their—their in-house or outside counsel—that they intended to pursue a bad faith claim against Westport in the event that they took an assignment from Agency One of their rights against Westport?
> A. There was some discussion about the potential need to evaluate such a claim.
> Q. Okay. And the potential need by whom to evaluate such a claim?
> A. I'm assuming whomever on behalf of Met.
> Q. Did they ask you to provide your evaluation of such a claim?
> A. They did not.

(Dudley Depo. at 47:21-48:15 (Filing No. 152-6 at CM/ECF p. 22)).

On February 27, 2014, Mr. Dudley forwarded a copy of Met P&C's demand letter to Westport's attorneys and, on behalf of Agency One and Siroky, made demand upon Westport "to pay and/or negotiate the demand [for payment of $244,243.00]

referenced in the enclosed correspondence." A response was requested within 7 days. (Filing No. 166 at CM/ECF p. 10, ¶¶ 30, 33; Filing No. 147-8 at CM/ECF p. 2). Westport rejected the demand on March 6, 2014. (Filing No. 166 at CM/ECF p. 34; Filing No. 147-9). Westport contends "[t]he fact that the letter from Agency One requested a response from Westport in a very short timeframe further evidences that the request to Westport was not a serious attempt to settle, and that Met P&C calculated and desired Westport to refuse." (Filing No. 166 at CM/ECF p. 27).

Met P&C counters that the allegations of bad faith in the complaint which was subsequently filed in this court "have nothing to do with the settlement negotiations that occurred in 2014 amongst counsel in the Iowa case.... Simply put, Westport's rejection letter of March 6, 2014, does not serve—in any way, shape or form—as a basis for the bad faith claim found in the operative complaint filed in Case No. 4:15-cv-3021." (Filing No. 168 at CM/ECF pp. 5, 6). Met P&C's argument continues:

> Rather, Westport's bad faith conduct began as early as August 2, 2011, when Westport advised Ms. Siroky that, despite Mr. Inlay's troubling acts, "Agency One will still have coverage in the event a claim is filed due to Mr. Inlay's behavior as long as such claim falls under the policy requirements and conditions." Westport didn't keep this promise. Instead, Westport used a series of questionable policy extensions to "satisfy" Nebraska's 60-day cancellation requirement and then unilaterally attached a last-minute Exclusion to the Policy at the same time it non-renewed the Policy. Westport then denied Agency One a defense to the Met P&C claims on May 11, 2012 and again on August 28, 2012.

(Filing No. 168 at CM/ECF pp. 5-6 (citations to record omitted)).

While Met P&C justly criticizes Westport's assertion that "the bad faith claim did not exist until Met P&C concocted the plan to manufacture such a claim," the pre-settlement discussions about filing a bad faith claim against Westport are not irrelevant because Agency One and Siroky's assignment of the bad faith claim to Met P&C formed part of the consideration for Met P&C's agreement not to execute on the

confessed judgment. Giving Westport the benefit of all reasonable inferences, these discussions are at least a factor to consider on the question of collusion.[32]

*Lack of Negotiation*

Second, Westport argues that "Agency One and Met [P&C] acted in concert to 'impose an uncompromised full balance of a judgment upon the insurer, while the insured incur(s) no real detriment.'" (Filing No. 166 at CM/ECF p. 29 (quoting *Sargent v. Johnson*, 551 F.2d 221, 232 (8th Cir. 1977)). It asserts that "even though Mr. Phillips was defense counsel for Agency One in the Iowa case, when it came time to negotiate a settlement, Mr. Phillips abdicated his role to Mr. Dudley," who "is licensed only in Nebraska [and] has no experience defending insurance agents or any other cases in Iowa or under Iowa law," and who "had not been involved in Agency One's defense in the Iowa case." (Filing No. 166 at CM/ECF p. 29 (citations to record omitted) & p. 6, ¶¶ 16-18).

Westport states that "Mr. Phillips had no involvement in settlement discussions." (Filing No. 166 at CM/ECF p. 29 & pp. 5-6, ¶ 14; Phillips Depo. at 51:23-24 (Filing No. 152-5 at CM/ECF p. 14)). Met P&C, however, contends Mr. Phillips's testimony shows he was "generally aware of the settlement discussions" (Filing No. 168 at CM/ECF p. 11), and it cites these portions of his deposition:

Q. Okay. Did you discuss with your client making any counteroffer to this [February 20, 2014] demand that's in Exhibit 107?

---

[32] In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

A. No. I don't think I ever discussed making a counteroffer, other than facilitating the discussion and prodding people from time to time because I was facing a series of pretrial deadlines in my case. I wasn't involved in the settlement discussions. I knew they were going on. As I said, I was poking at people to put some definition on their discussions and to keep me advised so that I would know whether I did or didn't have to do things like prepare jury instructions.

(Phillips Depo. at 51:15-52:3 (Filing No. 152-5 at CM/ECF p. 14)).

Q. Okay. Did you have discussions with Mr. Gray (Met PC's counsel in Iowa) regarding settling this case prior to receiving this letter [Exhibit 107]?
A. I believe the answer is yes.

(Phillips Depo. at 49:5-8 (Filing No. 152-5 at CM/ECF p. 14)).

Q. You – did you have any discussions with [Mr. Dudley] regarding settlement of the Met case versus Agency One and Pam Siroky prior to February 20, 2014?
A. If by "settlement" you mean, "There is an opportunity here, Mr. Dudley, see what you can do with it," yes. If by "settlement" you mean, "Here is the deal," no.

(Phillips Depo. at 50:25-51:7 (Filing No. 152-5 at CM/ECF p. 14)).

Q. Okay. Do you recall at what point that was that Mr. Dudley became the primary representative on behalf of Agency One and Pam Siroky to engage in these discussions with Met regarding settlement?
A. Well, it would have been sometime after these depositions that must have occurred before February 20 of 2014. Because early on in the process, after that initial discussion that I described that took place in the group setting, I discussed with Pam the wisdom of having more than one firm working on that project.

(Phillips Depo. at 53:22-54:8 (Filing No. 152-5 at CM/ECF p. 15)).

Q. Did you have any input into the discussions that were going on between Mr. Dudley and Mr. Gray that you just referenced?

A. Had I seen some compelling reason why I thought this was a bad idea in the context of my responsibility to my clients, I certainly had the opportunity to say, "Time-out guys. We're not doing this."

(Phillips Depo. at 84:24-85:7 (Filing No. 152-5 at CM/ECF pp. 22-23)).

Westport also asserts that "Mr. Phillips admitted that he did not spend time assessing the strengths of his clients' case" and "made no documented evaluation of his client's liability." (Filing No. 166 at CM/ECF p. 29). It references the following portions of Mr. Phillips's deposition testimony:

Q. Okay. Prior to the [Iowa] Court's ruling on the motion for summary judgment, did you evaluate the case in terms of you client's potential liability.
A. Yes.
Q. Okay. And did you document that evaluation with Ms. Siroky?
A. Yes, from time to time.
Q. Okay. And what was your evaluation of your client's potential liability with respect to the complaint?
A. That she had exposure because the analysis with respect to scope of employment was entirely fact-driven. Some of those restatement factors to which you stated favored her; some did not.
Q. Okay. Did you evaluate the strength of the economic loss defense?
A. I did, but I can't tell you without looking to see whether there are other exceptions than what we had discussed what my conclusion was.
Q. And would that be documented anywhere?
A. No.

(Filing No. 166 at CM/ECF p. 8, ¶ 24; Phillips Depo. 31:18-32:16 (Filing No. 152-5 at CM/ECF p. 9)).

Q. ... Did you assess whether a jury would find [Kelly Hanson of Met P&C] to be a credible witness?
A. I thought she was credible in her deposition. You have to understand that all Met had to do was get its policy into evidence and explain that it doesn't write the kind of coverage that it had to pay on,

and so there wasn't any need to spend a great deal of time assessing the credibility of Met's witnesses. They weren't going to need any.

(Filing No. 166 at 29; Phillips Depo. 34:7-15 (Filing No. 152-5 at CM/ECF p. 10)).

> Q. Did you discuss the issues and the defenses that are raised in this [brief in opposition to Met P&C's motion for partial summary judgment] with Mr. Dudley before it was filed?
> A. Not that I recall. You have to understand that this [case] came to me from Mr. Dudley's firm. At any given time, I suspect they—they knew exactly what the case was about.
> Q. Okay. But the question was did—did you discuss the issues and the defenses that are raised in this with Mr. Dudley on or around this time frame?
> A. Not that I recall.

(Filing No. 166 at CM/ECF p. 8, ¶ 23; Phillips Depo. at 55:19-56:5 (Filing No. 152-5 at CM/ECF p. 15)).

Mr. Dudley testified he did not attempt to negotiate a lower amount in the confession of judgment. (Filing No. 166 at CM/ECF pp. 13-14, ¶ 50; Dudley Depo. at 78-3-5 (Filing No. 152-6 at CM/ECF p. 21)). Westport also references portions of Mr. Dudley's deposition testimony in which it claims he "admitted that he did not understand the Iowa case or the defenses at issue" (Filing No. 166 at CM/ECF p. 29):

> Q. Okay. Did you come to learn that they had a defense on the negligence claim based upon the economic loss doctrine?
> A. I think the economic loss doctrine was discussed. Honestly, I did not understand it.
> Q. Okay.
> A. It's not a—that's not anything that applies in Nebraska that I'm aware of.
> Q. Okay. And you are—and you're not familiar with the Iowa law on the economic loss doctrine?
> A. No.

(Filing No. 166 at CM/ECF p. 7, ¶ 20; Dudley Depo. at 45:19-46:5 (Filing No. 152-6 at CM/ECF p. 13)).

> Q. Okay. During the course—during this time period before the settlement was – was finalized and reached when you were engaging in these discussions with representatives of Met, did you become aware that Agency One had a defense that it was asserting that Mr. Inlay's acts were not within the scope of his employment with Agency One?
>
> A. I generally was aware of that, yes.
>
> Q. Okay. And did you evaluate the strength of that defense on behalf of Agency One and Pam Siroky as—during the time period that you were engaging in these discussions with Met to resolve the Iowa case?
>
> A. Not really, other than talking with Mr. Phillips.

(Filing No. 166 at CM/ECF pp. 7-8, ¶ 22; Dudley Depo. at 47:3-9 (Filing No. 152-6 at CM/ECF p. 13)).

> Q. Okay. And did you have an understanding that after the [Iowa] Court entered its ruling on the motion for summary judgment, that the economic loss doctrine continued to be a viable defense that Agency One and Pam Siroky could present at trial?
>
> A. I—I—I honestly don't know.

(Filing No. 166 at CM/ECF p. 14, ¶ 52; Dudley Depo. at 51:1-6 (Filing No. 152-6 at CM/ECF p. 14)).

The evidence indicates the settlement was concluded with little negotiation. While there may be very good reasons for this, it is another factor to consider.

*Settlement amount*

Third, in arguing that the amount of the settlement was unreasonable, Westport states that prior to settlement "the court in the Met P&C action found in favor of Agency One and Ms. Siroky by denying summary judgment to Met P&C." (Filing No. 166 at CM/ECF p. 30). "Additionally," Westport states, "Agency One and Siroky had

-30-

asserted a defense to the negligence claims based on the Iowa economic loss rule." (Filing No. 166 at CM/ECF p. 30). As discussed above, however, the summary judgment motion concerned only the claims made against Agency One, and the district court declined to consider whether the "economic loss rule" applied to the negligence claim. In any event, Westport argues that "[b]ecause no deduction was afforded or even discussed with regard to the amount of the consent judgment to account for the viable defenses that Agency One and Siroky abandoned in settling the claim, a question of reasonableness arises sufficient to defeat enforcement of the consent judgment against Westport or, at a minimum, to preclude summary judgment on Westport's collusion defense." (Filing No. 166 at CM/ECF p. 31).

Westport notes that "Mr. Phillips did not testify that he believed the settlement amount was reasonable," and contends that "although Mr. Dudley testified that the settlement was 'reasonable,' an examination of his testimony shows he was referring to the *fact* of the settlement, from the perspective of Ms. Siroky's own financial condition, and not the *amount* of the settlement in relation to relative defenses, was reasonable." (Filing No. 166 at CM/ECF pp. 31-32 (emphasis in original)). Mr. Dudley's testimony was as follows:

> Q. Okay. Did you assess whether the amount that the judgment was entered in, this 261 amount, was reasonable in light of the merits of the defenses that were being prepared for Agency One for the trial, the economic loss, causation, scope of employment defenses?
>
> A. I'm not in a position to evaluate the defenses that were raised in the Iowa case, but it certainly was reasonable when you take into consideration where my client found herself, facing the ongoing litigation in both states and the fact that she was looking at having to pay a judgment, potentially, for which she had no coverage. Certainly it was reasonable under those circumstances given the assignment.
>
> Q. In assessing the reasonableness, did you consider the degree of probability of Met's success against Agency One and Pam Siroky in the Iowa litigation? That factor, did you consider it?
>
> A. I wasn't in a very good position to assess that. I—I don't understand the Iowa case. I didn't understand some of the defenses.
>
> Q. So your—is your answer you did not consider that?

-31-

A. I—I didn't—well, what was considered was whether or not she could lose. And it was clear to me based on information I had that she could lose, and she would be responsible for that judgment personally.

(Filing No. 166 at CM/ECF pp. 6-8, 14 ¶¶ 19, 51; Dudley Depo. at 79:16-80:19 (Filing No. 152-6 at CM/ECF p. 21)). Westport also contends Mr. Dudley's statement testimony that Siroky would be "responsible for that judgment personally" is untrue because "as Mr. Phillips admitted and the documents bear out, Met P&C agreed before settlement negotiations began that it would *not* pursue Ms. Siroky personally." (Filing No. 166 at CM/ECF p. 32 (emphasis in original)).

Met P&C observes that Nebraska law allows an insured to "make such a settlement as ordinary and reasonable prudence and caution might dictate to be advisable," *Otteman*, 111 N.W.2d at 103, and argues that the "reasonably prudent person" referenced in this test means a person who has a stake in the outcome. (Filing No. 168 at CM/ECF p. 8). "It means a person who is making decisions as though the money that pays the settlement comes from his or her own pocket. This is not a test of what a reasonably prudent person would settle the case for with someone else's funds. It is what a 'reasonably prudent person' would pay from his or her own resources, assuming they are sufficient, 'on the merits' of the case." *Himes v. Safeway Ins. Co.*, 66 P.3d 74, 82 (Ariz.App. 2003). Met P&C's argument actually favors Westport, because there is evidence that Agency One and Siroky were uninterested in the amount of the settlement.

*Concealment*

Fourth, Westport complains that after the demand letter of February 27, 2014, "no further communication was made to Westport either before or after Westport responded." (Filing No. 166 at CM/ECF p. 33). In responding to that demand letter, Westport had stated:

As you know, Westport has determined that no coverage exists under the Policy for the Complaint based on its analysis of the allegations of the

-32-

Complaint, the terms, conditions and exclusions of the Policy and applicable law. Westport advised the insured that it will not provide a defense to the Complaint and will not indemnify the insured for any loss that arises out of the lawsuit. Due to Westport's coverage determination, Westport will not accept and therefore rejects the request by the insured to satisfy the $244,243 demand to settle made by Metropolitan Property & Casualty Insurance Company. Westport likewise rejects the request that Westport conduct negotiations with Metropolitan on behalf of the insured to resolve the case.

We note that, after Westport issued its declination of coverage position, your client sued Westport. The coverage issues will be resolved in that case, which remains pending. Notwithstanding the pendency of the coverage action and without prejudice to or waiver of Westport's declination position, Westport is willing to consider a contribution to a compromise resolution of the insured's potential liability in the captioned lawsuit. However, any contribution by Westport will be based on a reasonable estimation of the likelihood that Westport will prevail in the coverage action, which we deem to be high. Westport has evaluated the law and the evidence adduced in discovery and has determined that it cannot accept plaintiff's demand to settle because that amount remains exorbitantly high and fails to reflect any realistic assessment of the coverage issues. Nevertheless, Westport remains open to considering other proposals you may have.

(Filing No. 166 at CM/ECF p. 11, ¶ 34; Filing No. 147-9 at CM/ECF pp. 2-3).

This factor is entitled to no weight because Westport's prior declination of coverage and refusal to provide Agency One and Siroky with a defense, on May 11, 2012, and again on August 28, 2012, relieved the insureds of any further obligation to communicate with Westport before settling the Iowa lawsuit.[33] As stated by the Nebraska Supreme Court in *Frazier, Inc. v. 20th Century Builders, Inc.*, 198 N.W.2d 478, 482 (Neb. 1972), involving a similar fact situation, "[t]o hold that [Agency One

---

[33] The court expresses no opinion as to whether any further communication was required in order to establish a bad faith claim as alleged in Case No. 4:15CV3021.

-33-

and Siroky] had any additional obligation to keep [Westport] informed of the developments would be absurd."

*Profiting by Insureds*

Fifth, Westport claims "[t]he evidence of record demonstrates that Agency One and Ms. Siroky stood to profit from the assignment." Two pieces of evidence are cited. The first is Mr. Cavas's February 17, 2014 email to Mr. Gray, in which he stated:

> If we can successfully bring the [bad faith] suit in Iowa and can plead punitive damages [which are not available in Nebraska], we will need the cooperation of Siroky. To that end, Met P&C will agree to split any punitive damages received from the carrier on a 50/50 basis with her.

(Filing No. 166 at CM/ECF p. 9, ¶ 28; Filing No. 167-2 at CM/ECF p. 3). The second piece of evidence is a follow-up email from Mr. Cavas to Mr. Gray, dated March 27, 2014, in which he stated:

> Under Iowa law, I believe an insured can seek damages for emotional distress arising from the BF.... As I mentioned before, we need her cooperation, so anything we recover above what we paid to the insured, we'll split 50/50 with [Siroky].

(Filing No. 166 at CM/ECF pp. 9-10, ¶ 29; Filing No. 167-2 at CM/ECF p. 8).

Met P&C points out that "[t]he assignment did not provide for any agreement that Ms. Siroky would share in any settlement or judgment obtained by Met P&C against Westport." (Filing No. 168 at CM/ECF p. 23). Also, "Mr. Dudley testified that he was unaware of any offer by Met P&C to share any of the proceeds that it expected to obtain in litigation against Westport with Agency One or Ms. Siroky" (Filing No. 168 at CM/ECF p. 23):

> Q. ... Did Met ever—in addition to an assignment and a consent judgment, did Met ever offer to share any of the proceeds that it expected

or hoped to obtain in litigation against Westport with Agency One or Pam Siroky?

A. There was never an offer that I'm aware of.

(Dudley Depo. at 41:2-8 (Filing No. 152-6 at CM/ECF p. 12)).

Q. ... Do you recall any discussions between you and any representatives of Met regarding Met's willingness to share with Agency One or Pam Siroky any recovery on an intentional infliction of emotional distress count?

A. I don't remember there being any offer made.

(Dudley Depo. at 44:17-23 (Filing No. 152-6 at CM/ECF p. 12)).

Q. Is there any agreement between Agency One and Pam Siroky and Met with respect to recoupment of any fees Ms. Siroky and Agency One have paid you to litigate the coverage case. Is she—

A. Not—not that I'm aware of.

Q. So there's no potential for her to get that money back?

A. I—I don't know. I don't know what conversations , if any, she would have after my—I was no longer involved in the case. There was no agreement with Met at the time of the assignment that she would get attorney fees back.

Q. Okay. And—and, likewise, there's no agreement that—that— when you were involved in the discussions with Met, there was no discussion or agreement that she would, in fact, get anything if Met decided to continue to litigate against Westport and was successful; is that correct?

A. There was no agreement.

Q. Okay. Was there a discussion?

A. .... With Met? Not that I recall.

(Dudley Depo. at 83:14-84:15 (Filing No. 152-6 at CM/ECF p. 22); Filing No. 166 at CM/ECF p. 15, ¶ 57). "Mr. Phillips testified similarly" (Filing No. 168 at CM/ECF p. 23):

Q. Were you aware of any proposals regarding an assignment of rights against Westport that included an agreement between Met and

-35-

Agency One to split any proceeds of any emotional distress type claims
against Westport?

      A. No. I'm not sure I'd ever knew that there was an emotional
distress claim against Westport.

      Q. Okay. Did Met ever make any demands that included both an
assignment of rights against Westport and payment of some money from
Agency One and Pam Siroky—and I'm—other than this [February 20,
2014] letter that we're looking at?

      A. Not to my knowledge. But I qualify it in that fashion because
I'm not sure they ever made any demands on me at all.

(Phillips Depo. at 52:20-53:9 (Filing No. 152-5 at CM/ECF p. 14)).

      While the evidence indicates Met P&C may have been willing to enter into an
agreement with Siroky to split punitive damages or damages for her emotional
distress, there is no evidence such an offer was ever made or accepted. In short,
Westport cannot prove that Agency One or Siroky stood to profit from the settlement.

*Met P&C's Offer of Assistance*

      Sixth, and finally, Westport contends "the evidence demonstrates Met P&C was
concerned over its ability to collect on judgment against Agency One and Siroky."
(Filing No. 166 at CM/ECF p. 35). It states that "Met P&C's concern is reflected in
an email from Mr. Phillips to Mr. Goyette, Mr. Dudley's colleague, relaying an offer
by Mr. Gray, Met P&C's attorney, to assist Agency One and Siroky in its coverage
case." (Filing No. 166 at CM/ECF p. 35). The email, which is dated January 6, 2014,
reads in part:

I don't think Met Life's counsel had focused on the fact that Pam has no
coverage in our case. After [Siroky's] deposition, he and I talked a little
about what was going on. He was not aware that Pam had separate
counsel litigating the coverage issue. Met Life's lawyer is pretty realistic.
I think he has concluded that the only way he will ever collect, if he
should prevail, is if you are successful with your case. With that in mind,

he asked me whether it would be ok to talk to you and see if there is anything he can do to assist you with your case.

(Filing No. 166 at CM/ECF p. 11, ¶ 37; Filing No. 147-6 at CM/ECF p. 2).When asked if representatives of Met P&C had offered to assist him in the prosecution of the coverage action against Westport, however, Mr. Dudley testified: "They did not." (Dudley Depo. at 45:4-9 (Filing No. 152-6 at CM/ECF p. 21).

Mr. Phillips's statement regarding opposing counsel's supposed reason for wanting to assist Siroky in the instant action is inadmissible hearsay, and no other evidence has been presented to support Westport's assertion that Met P&C was concerned about it ability to collect on a judgment against Agency One and Siroky. Indeed, there is no evidence which even suggests they were judgment proof.

In conclusion, Westport's collusion defense is weak, but there is sufficient evidence—primarily dealing with the lack of negotiation and the amount of the confessed judgment—to withstand a motion for summary judgment.  Accordingly,

IT IS ORDERED:

1.  Plaintiff's first motion for partial summary judgment (Filing No. 131) is granted. The court finds as a matter of law that the direct negligence claim Plaintiff brought against Agency One and Pam Siroky in the Iowa lawsuit was covered by Defendant's insurance policy, and that Defendant breached its duties to defend and indemnify the insureds.

2.  Defendant's motion for reconsideration (Filing No. 145) is denied.

3.  Defendant's motion to strike (Filing No. 159) is denied without prejudice.

-37-

4.      Plaintiff's second motion for partial summary judgment (Filing No. 161) is denied.

5.      Defendant's motion for leave to file sur-reply (Filing No. 169) is granted instanter, and the attachment (Filing No. 169-1) is accepted without need for refiling.

6.      Plaintiff's motion for leave to file supplemental authority (Filing No. 170) is granted instanter, and the attachment (Filing No. 170-1) is accepted, without need for refiling.

DATED this 18ᵗʰ day of September, 2015.

BY THE COURT:

s/ Richard G. Kopf
Senior United States District Judge

---

* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.